IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 1:26-cv-136-RBJ

WILMER ALAS HERRERA,

      Petitioner,

v.

JUAN BALTAZAR, GEORGE VALDEZ,
MARKWAYNE MULLIN, TODD LYONS,
PAM BONDI,[1]
in their official capacities,

      Respondents.

---

## ORDER

---

Before the Court is petitioner Wilmer Alas Herrera's ("petitioner" or "Mr. Herrera") Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1, and Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"), ECF No. 3. Respondents are holding Mr. Herrera in immigration detention at the Denver Contract Detention Facility in Aurora, Colorado. ECF No. 1 at ¶ 5. Mr. Herrera

---

[1] Pursuant to Fed. R. Civ. P. 25(d), George Valdez and Markwayne Mullin have automatically been substituted as parties in their official capacities as Acting Director of the Denver Field Office, U.S. Immigration and Customs Enforcement ("ICE"), and Secretary for the Department of Homeland Security ("DHS"), respectively.

seeks an order declaring his detention unlawful and releasing him from custody. *Id.* at 23; ECF No. 3 at 20. Respondents oppose the requested relief. ECF No. 11 at 2.

The matter has been fully briefed. ECF Nos. 1, 3, 11, 13. As there is no disagreement as to relevant facts, and the dispute is fundamentally legal in nature, the Court declines to hold a hearing. 28 U.S.C. § 2243; *see, e.g.*, *Garcia Cortes v. Noem*, 1:25-cv-02677-CNS, 2025 WL 2652880, at *1 (D. Colo. Sept. 16, 2025). The Court finds that, under the circumstances presented here, Mr. Herrera's detention does not comport with due process under the 5th Amendment of the United States Constitution and likewise violates binding agency regulations intended to provide due process, requiring his release. Therefore, for the reasons set forth below, the Petition is GRANTED.[2]

## I.    Background

Mr. Hererra is a native and citizen of El Salvador with a history of making unauthorized entries into the United States and being removed.

In 2010, Mr. Hererra was first encountered by ICE in Colorado and placed in removal proceedings. ECF No. 11 at 2–3. He admitted that he was inadmissible, did not seek relief from removal, waived appeal of the removal order, and was removed to El Salvador. *Id.* at 3.

---

[2] Because Mr. Herrera's Motion raises the same legal claims and seeks the same relief granted under the Petition, the Motion is respectfully denied as moot. *See Loa Caballero v. Baltazar*, 25-cv-03120-NYW, 2025 WL 2977650, at *9 (D. Colo. Oct. 22, 2025).

In 2013, Mr. Herrera was again encountered by immigration authorities, this time in Texas. *Id.* His prior removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5), and he was removed to El Salvador. *Id.* The following year, Mr. Herrera was once again apprehended in Texas and removed pursuant to his reinstated prior order. *Id.* Mr. Herrera was arrested in Texas by immigration authorities for a third time on November 5, 2016, however, this time, he claimed a fear of persecution or torture if he were returned to El Salvador. *Id.*

Pursuant to 8 C.F.R. §§ 208.31, 1208.31, Mr. Herrera's claim triggered an interview with an asylum officer, who found that he had established a reasonable fear of persecution or torture in El Salvador. *Id.* at 4. This finding initiated withholding of removal proceedings. *Id.* On March 7, 2022, an Immigration Judge denied Mr. Herrera's claim for withholding of removal under 8 U.S.C. § 1231(b)(3)(A) and for similar relief under the Convention Against Torture. *Id.* Mr. Herrera filed a timely appeal to the Board of Immigration Appeals ("BIA"). *Id.* His appeal remains pending nearly four years later. *Id.*

Additionally, and importantly for this case, on November 9, 2016, a few days after his apprehension in Texas, Mr. Herrera was released by immigration authorities under an order of supervision ("OSUP") while he participated in withholding of removal proceedings. ECF No. 1 at ¶ 23; ECF No. 11 at 4. Mr. Herrera returned to

3

Colorado to live with his family, specifically, his wife and three children, the youngest of whom is a United States citizen. ECF No. 1 at ¶ 24.

In the nine years following his release, Mr. Herrera has complied with the terms of his supervision and his withholding of removal proceedings. *See id.* at ¶¶ 25–26. He was initially placed on very strict reporting requirements, but ICE gradually relaxed his supervision.[3] *Id.* at ¶ 25. At his monthly check-in on August 6, 2025, ICE noted that he was compliant with his OSUP. ECF No. 1-2 at 44. Nevertheless, the following month, he was placed on an ankle monitor, a prelude to his subsequent redetention. ECF No. 1 at ¶ 27.

On October 6, 2025, during a routine check-in, ICE rearrested Mr. Herrera. *Id.* at ¶ 28; ECF No. 11 at 4. Mr. Herrera asserts—and respondents do not dispute—that he was provided no notice of ICE's intention to revoke his release, any real explanation for why they were doing so, nor any opportunity to challenge the revocation. ECF No. 1 at ¶ 29.

Through a sworn affidavit signed by ICE Officer Shane Blea, the deportation officer assigned to Mr. Herrera's case, respondents state that ICE "revoked his release on supervision pursuant to 8 C.F.R. § 241.4(*l*)(2)(i), (iii), and (iv)." ECF No.

---

[3] Although Mr. Herrera was convicted of a misdemeanor for driving under the influence in 2020—his only criminal legal contact—respondents do not argue that this had anything to do with the revocation of his release or the rationale for his present detention.

11 at 4 (citing ECF No. 11-1 at ¶ 27). Respectively, these sections permit the revocation of supervised release for a noncitizen subject to a final order of removal, where, in the opinion of an authorized official: (1) "[t]he purposes of release have been served," *id.* § 241(*l*)(2)(i); (2) "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien," *id.* § 241(*l*)(2)(ii), or; (3) "[t]he conduct of the [noncitizen], or any other circumstances, indicates that release would no longer be appropriate," *id.* § 241(*l*)(2)(iii). Neither respondents' brief nor the underlying affidavit provide any indication of *who* at ICE made these determinations.

Officer Blea also swears that on January 29, 2026, more than four months after his arrest, Mr. Herrera was served with a Notice of Revocation of Release advising him that his release was revoked "because the purposes of release have been served," "ICE has the ability and means to effectuate removal," and the denial of his applications for relief constitute "a change in circumstance." ECF No. 11-1 at ¶ 30. Respondents did not submit this notice along with their filing.

Finally, Officer Blea asserts that Mr. Herrera received a Notice of File Custody Review on January 21, 2026 advising him that: (1) ICE would be reviewing his detention pursuant to 8 C.F.R. § 241.4, (2) some of the factors that it would consider, and (3) that he could submit documents in support of his release. ECF No. 11 at 4–5. Counsel for petitioner submitted a request for release attaching letters of

support and other proof establishing Mr. Herrera's lack of flight risk or danger to the community.  ECF No. 1-2 at 5–59.  Respondents also allege that Mr. Herrera was scheduled to receive an informal interview on February 9, 2026.  ECF No. 11 at 5 (citing ECF No. 11-1 at ¶ 30).  That date has come and gone, and Mr. Herrera is still in detention, indicating that his application for release was denied.

## II.    Legal Standards

### 1.  Habeas Corpus under 28 U.S.C. § 2241

A district court may grant a writ of habeas corpus to any person who demonstrates that he is "in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2241.  Mr. Herrera, as the individual in custody, bears the burden of proving that his detention is unlawful.  *Walker v. Johnston*, 312 U.S. 275, 286 (1941).  Section 2241 habeas proceedings are available as a forum for statutory and constitutional challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678 (2001).

### 2.  Post-Order of Removal Detention under 8 U.S.C. § 1231

The parties agree that because Mr. Herrera is subject to a reinstated final order of removal, his detention is governed by 8 U.S.C. § 1231(a)(6).  *See* ECF No. 1 at ¶ 21; ECF No. 11 at 6.  The Supreme Court has held that 8 U.S.C. § 1231 applies to noncitizens, like Mr. Herrera, in withholding of removal proceedings.  *Johnson v. Guzman Chavez*, 594 U.S. 523 (2021).

6

The Attorney General "shall detain" a noncitizen during the first 90 days after the entry of an administratively final order of removal, known as the "removal period." 8 U.S.C. § 1231(a)(2); *id.* §§ 1231(a)(1)(A), (B)(i). After that, if the noncitizen "does not leave or is not removed," release under supervision is the default. *Id.* § 1231(a)(3). However, the Attorney General may detain certain categories of noncitizens beyond the removal period. *Id.* § 1231(a)(6) (specifying grounds for detention following the removal period). Mr. Herrera falls into one of these categories because he is inadmissible. *See* ECF No. 11 at 2-3 (stating that Mr. Herrera was charged and ordered removed as a noncitizen "present in the United States without being admitted or paroled" under 8 U.S.C. § 1182(a)(6)(A)(i)).

Nevertheless, detention after the removal period is limited. The only legitimate purposes of immigration detention are preventing danger to the community and ensuring that the removal order can be enforced. *Zadvydas*, 533 U.S. at 690-92. And even then, the Supreme Court has found that, to avoid constitutional concerns, detention under § 1231(a)(6) is presumptively reasonable only up to six months. *Id.* at 701. After that point, the noncitizen must be released— subject to supervision—unless removal is significantly likely in the "reasonably foreseeable future." *Id.*

### 3.  Revocation of Supervised Release and Custody Review under § 241.4

If a noncitizen subject to a final order of removal is released from detention, that release may be revoked under certain circumstances.  *See id.* at  696.  Revocation of release is governed by regulation.  *See* 8 C.F.R. § 241.4(*l*).

Under 8 C.F.R. § 241.4(*l*)(1), release may be revoked whenever a noncitizen "violates the conditions of release."  *Id.*  "Upon revocation," a noncitizen must "be notified of the reasons for revocation," and shortly after their return to custody, "be afforded an initial interview" in order "to respond to the reasons for revocation stated in the notification."  *Id.*

Separately, 8 C.F.R. § 241.4(*l*)(2) states that release may be revoked, when "in the opinion of the revoking official": (i) "[t]he purposes of release have been served"; (ii) "[t]he alien violates any condition of release; (iii) "[i]t is appropriate to enforce a removal order or to commence removal proceedings against an alien;" or (iv) "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate."  *Id.* §§ 241.4(*l*)(2)(i)-(iv).  Under this section, only the Executive Associate Commissioner or, under certain circumstances, the district director, may revoke release in the exercise of their discretion.  *Id.* § 241.4(*l*)(2).

Unlike § 241.4(*l*)(1), this section does not expressly require the noncitizen to receive notice of the reasons for revocation nor a prompt interview to contest their redetention.  However, courts have concluded that these sections must be read

together such that the procedural protections that attend revocation under § 241.4(*l*)(1) likewise apply to § 241.4(*l*)(2). *See, e.g.*, *Izquierdo Navarro v. Bondi*, 25-cv-04210-NYW, 2026 WL 468582, at *2 (D. Colo. Feb. 18, 2026).

There are good reasons for this. Initially, release may be revoked under § 241.4(*l*)(2)(ii) if the noncitizen violates any condition of their release—the same basis as revocation under § 241.4(*l*)(1). It would be incongruous if ICE could avoid providing notice and an interview to a noncitizen believed to have violated supervised release so long as they invoked § 241.4(*l*)(2) as the revocation authority instead of § 241.4(*l*)(1). *See, e.g.*, *Zhu v. Genalo*, 798 F. Supp. 3d 400, 410 (S.D.N.Y. 2025). Furthermore, it defies reason that the regulation would afford more process to a noncitizen who has violated the terms of their release than to one whose release is revoked on other grounds. *See, e.g.*, *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025). Finally, 8 C.F.R. § 241.4(*l*)(3), which requires ICE to conduct a custody review "within approximately three months after release is revoked" if the noncitizen is not "released from custody following the informal interview" pursuant to § 241.4(*l*)(1), plainly applies to all revocations, "suggesting that paragraph (*l*) sets forth a unified set of procedures for the revocation of [release]" for both § 241.4(*l*)(1) and (2). *Grigorian v. Bondi*, 25-cv-22914-RAR, 2025 WL 2604573, at *7 (S.D. Fla. Sept. 9, 2025) (citing *Zhu*, 798 F. Supp. 3d at 410).

For these reasons, consistent with the weight of authority, this Court finds that § 241.4(*l*) requires notice upon revocation and a prompt informal interview "regardless of the reason for the revocation" or the particular section invoked. *Ceesay*, 781 F. Supp. 3d at 163.

### III.   <u>Analysis</u>

Mr. Herrera argues that the revocation of his release and his detention violates substantive and procedural due process under the 5th Amendment (Counts I and II), is arbitrary and capricious and contrary to statutory authority under the Administrative Procedure Act ("APA") (Counts III and IV), is *ultra vires* action (Count V), and violates the *Accardi* doctrine, which requires agencies to follow their own procedures (Count VI).  Because the Court agrees that the revocation of Mr. Herrera's release violates procedural due process under the constitution and mandatory agency regulations intended to provide the same (Counts I and VI), necessitating relief, it does not reach Mr. Herrera's other claims.  *See Leyva Ramirez v. Baltasar*, 26-cv-00199-NYW, 2026 WL 318989, at *3-4 (D. Colo. Feb. 6, 2026). Nor does the Court reach the petitioner's due process claims with respect to ICE's third-country removal policy.  *See* ECF No. 3 at 11–15, 17–18.  There is no evidence that respondents are attempting to deport him to a third country.

### 1. <u>Mr. Herrera was denied constitutional due process</u>

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

It is well-established that the Constitution affords due process protection to individuals who have a grant of conditional liberty. *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471 (1972) (parole); *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) (probation); *Young v. Harper*, 520 U.S. 143 (1997) (supervised release). Even where the government has the initial discretion to maintain an individual in detention, once they are released, "that liberty is valuable" and "[i]ts termination calls for some orderly process, however informal." *Morrissey*, 408 U.S. at 482; *see also Calderon v. Kaiser*, 25-cv-06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025).

It is also undisputed that constitutional due process extends to noncitizens, regardless of whether "their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. While it is true that "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens," the issue here is not whether Mr. Herrera is properly subject to mandatory detention by statute, but whether, having complied with the terms of his release for nine years, due process protects him from its summary revocation. *Demore v. Kim*, 538 U.S. 510, 522 (2003). The Court finds that it does. *See, e.g.*, *Zhu*, 798 F. Supp. 3d at 408;

11

*M.S.L. v. Bostock*, 6:25-cv-01204-AA, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025); *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017). Indeed, "[g]iven the civil context, [Mr. Herrera's] liberty interest is arguably greater than the interest of parolees" who have been convicted of criminal offenses. *Guillermo M.R. v. Kaiser*, 891 F. Supp. 3d 1021, 1029–1033 (N.D. Cal. 2025).

In order to determine whether Mr. Herrera received constitutionally adequate protections with respect to the revocation of his supervised release, the Court applies the familiar three-part *Mathews* due process balancing test. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *see, e.g.*, *Ruiz Diaz v. Noem*, 26-cv-00782-SKC, 2026 WL 733587, at *3 (D. Colo. Mar. 16, 2026) (applying the *Mathews* balancing test in the context of a habeas challenge to immigration detention); *Moreno Santana v. Baltazar*, 26-cv-0787-WJM-SBP, 2026 WL 709759, at *2-3 (D. Colo. Mar. 13, 2026) (same). Under this test, the Court must weigh: (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors tip heavily in Mr. Herrera's favor. First, the private interest involved is undeniably substantial, as a "person's physical freedom is the

most elemental of liberty interests." *Moreno Santana*, 2026 WL 709759, at *3. Prior to his rearrest and detention, Mr. Herrera was living with his family, working, and awaiting the outcome of his withholding of removal proceedings for nearly a decade. The request for release packet submitted by his counsel, which includes letters of support, make plain the financial and emotional impact on Mr. Herrera's family. ECF No. 1-2 at 5-59. Moreover, Mr. Herrera is detained at a facility that courts in this District have routinely recognized is "more akin to incarceration than civil confinement" due to its poor conditions and harsh treatment of detainees. *Daley v. Choate*, 22-cv-03043-RM, 2023 WL 2336052, at *4 (D. Colo. Jan 6, 2023); *see also Arostegui-Maldonado*, 794 F. Supp. 3d 926, 940 (D. Colo. 2025).

Second, Mr. Herrera has shown that respondents risked the erroneous deprivation of his liberty by foregoing the procedures set forth in § 241.4(*l*)—and indeed, any procedures at all—when they revoked his release. Respondents claim that his release was revoked pursuant to § 241.4(*l*)(2)(i), (iii), and (iv), but make no effort to support those determinations. They do not, for instance, explain how "the purposes of his release have been served," why it is "appropriate to enforce" Mr. Herrera's removal order while his appeal is still pending, or how the denial of relief four years prior constitutes a change in circumstance indicating "that release would no longer be appropriate." § 241.4(*l*)(2)(i), (iii), and (iv). The Court recognizes that these provisions vest the designated ICE officials with substantial discretion to

13

revoke release. However, substantial discretion does not mean that Mr. Herrera's release can be revoked under these provisions for no reason *at all*. *See, e.g.*, *M.S.L.*, 2025 WL 2430267, at *12 ("Plainly, 8 C.F.R. § 241.4(*l*) involves the exercise of discretion, but that discretion is limited by the terms of the regulation itself.").

Here, respondents' failure to provide Mr. Herrera with notice of the reasons for his revocation and an interview deprived him of the ability to ascertain the purported bases for his redetention, such that they were, and challenge them. "The essential requirements of due process include adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) (internal quotation marks omitted); *see also Grigorian*, 2025 WL 2604573, at *9 ("The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands."). As these cornerstones of due process were completely absent here, the risk that Mr. Herrera was erroneously deprived of his liberty is unacceptably high.

It is of no moment that ICE allegedly provided a Notice of Revocation letter to Mr. Herrera nearly four months after he was re-detained. *See, e.g.*, *K.E.O. v. Woosley*, 4:25-cv-74-RGJ, 2025 WL 2553394, at * (W.D. Ky. Sept. 4, 2025) (finding that the provision of a Notice of Revocation letter three months after petitioner's redetention did not satisfy due process). Beyond the extreme delay, the

14

letter itself was deficient.  Respondents did not submit the letter in this case, but their description (*see* ECF No. 11 at 5) reflects that it did little more than "parrot[] the regulatory text governing re-detention" found at § 241.4(*l*)(2)(i), (iii), and (iv). *Roble v. Bondi*, 803 F. Supp.3d 766, 771 (D. Minn. 2025).  Mr. Herrera "cannot be expected to respond to the reasons for revocation stated in the notification if the notification does not actually *state* any reasons for revocation." *Id.*; *see also Perez-Escobar*, 792 F. Supp. 3d at 226 (finding that a substantially similar letter did not provide adequate notice of the reasons for redetention) (emphasis in original).

By the same token, Mr. Herrera's recent custody review pursuant to § 241.4(*l*)(3) does not abate the unlawful nature of his redetention.  Under the respondents' view, "someone arrested based on the revocation of [OSUP] not related to a violation of conditions might spend three months or more in custody before getting *any* opportunity to contest" their detention. *Ceesay*, 781 F. Supp. 3d at 164. "That cannot be—and is not—the law." *Id.*  This Court concludes that "the faint promise of an opportunity to be heard three months down the line" does not "satisfy what due process requires." *Grigorian*, 2025 WL 2604573, at \*9.  In all events, this review was deficient because, as discussed, "ICE's conclusory explanation for revoking [Mr. Herrera's] release did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond." *Perez-Escobar*, 792 F. Supp. 3d at 226.

Finally, as to the third factor, "the Court finds that the burden on the Government to comport with its own regulations—if doing so amounts to a 'burden' at all—is nowhere near so weighty as to outweigh the concomitant suppression of Petitioner's liberty." *Dudamel v. Jamison*, Civil Action No. 26-361, 2026 WL 498612, at *8 (E.D. Pa. Feb. 23, 2026). Moreover, the government has no legitimate interest "in ensuring the detention of noncitizens who are neither dangerous nor a risk of flight." *Alfaro Herrera v. Baltazar*, 1:25-cv-04014-CNS, 2026 WL 91470, at *10 (D. Colo. Jan. 13, 2026). As respondents do not argue that Mr. Herrera is either a danger or a flight risk, they have not demonstrated any governmental interest in his redetention.

Accordingly, all three *Mathews* factors weigh overwhelmingly in Mr. Herrera's favor, and he has established a procedural due process violation. Respondents' arguments that he has failed to show, under the *Zadvydas* framework, that his detention has become unconstitutionally prolonged and his removal is not reasonably foreseeable are inapposite. ECF No. 11 at 7–11.

Furthermore, contrary to respondents' position, *id.* at 12–14, the proper remedy is Mr. Herrera's immediate release. Like the majority of courts to consider this issue, the Court concludes that a due process violation rooted in ICE's failure to follow its own regulations with respect to revoking release requires release. *See, e.g., Grigorian*, 2025 WL 2604573, at *10; *Ceesay*, 781 F. Supp. 3d at 166; *Zhu*,

16

789 F. Supp. 3d at 414; *Rombot*, 296 F. Supp. 3d at *388-89; *Phan v. Noem*, 3:25-cv-02422-RBM-MSB, 2025 WL 2898977, at *5 (S.D. Cal. Oct. 10, 2025).

Alternatively, the Court rejects respondents' contention that Mr. Herrera has suffered no prejudice as a result of the violation.[4]  As discussed, the government's discretion to revoke an order of supervision is not unfettered, and detention must be "reasonably related to the statutorily authorized purposes of preventing flight and danger to the community." *L.A.E. v. Wamsley*, ---F. Supp. 3d----, 3:25-cv-01975-AN, 2025 WL 3037856, at *3 (D. Or. Oct. 30, 2025) (citing *Zadvydas*, 533 U.S. at 690).  Where, as here, there is no "factual support that Petitioner's re-detention serves an important governmental interest, the Court finds it unlikely that the same outcome would materialize had the proper procedures been followed." *Dudamel*, 2026 WL 498612, at *9; *see also Funes v. Francis*, 810 F. Supp. 3d 472, 502 (S.D.N.Y. 2025) ("It is unknowable whether, had the proper procedure been followed and [petitioner] been given a meaningful opportunity to respond and appeal to ICE's discretion, the same outcome would have followed").  It is of no moment

---

[4] In addition to being nonbinding, the authorities cited by respondents are distinguishable.  In contrast to Mr. Herrera, the petitioner in *Olmedo v. ICE*, No. 25-3159-JWL, 2025 WL 2821860 (D. Kan. Oct. 3, 2025) had never been released on an order of supervision, and thus did not possess the same government-endowed liberty interest.  In *Bahdorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932 (W.D. Okla. Oct. 31, 2025), ICE's only failure was not providing petitioner with a formal notice of the reasons for revocation some time prior to the revocation, as opposed to the instant matter, where ICE did not provide *any* process to Mr. Herrera until four months after his revocation.  Finally, *Medina v. Noem*, 794 F. Supp. 3d 365, 382 (D. Md. 2025) is inapposite because, in that case, petitioner received an adequate notice of revocation of release at the time of re-detention and an informal interview within two weeks.

that Mr. Herrera's release was denied at his recent custody review because the revocation was void *ab initio*.  *See Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 788 (D. Minn. 2025) (ordering release of habeas petitioner detained in violation of 8 C.F.R. § 241.13 despite ICE's acquisition of cause for redetention after-the-fact).

By the same token, respondents' suggestion that the cure for this due process violation is simply more process misses the mark.  The Court has already rejected the notion that ICE's much-belated issuance of a Notice of Revocation and *post hoc* custody review satisfied the government's due process obligations or mitigated the risk of erroneous deprivation, *supra* at 14–15.  Respondents offer no reason to find that, after nearly six months of unlawful detention, merely repeating that same deficient process would now suffice.

Under these circumstances, "[t]he only way to vindicate [Mr. Herrera's] due process rights is to order his release from custody." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 705 (S.D. Tex. 2025).

### 2. **Mr. Herrera was denied due process under the *Accardi* doctrine.**

Mr. Herrera's release is further compelled by ICE's failure to follow its binding regulations intended to provide due process.  *See, e.g.*, *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087 (D. Md. Aug. 25, 2025).  This failure constitutes a related but independent basis for relief.

18

"It goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble*, 803 F. Supp. 3d at 766 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Known as the *Accardi* doctrine, "an agency's failure to afford procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination." *Santamaria Orellana*, 2025 WL 2444087, at *5 (internal quotation marks and citation omitted). While "not every agency misstep will compel reversal of an agency action," *Grigorian*, 2025 WL 2604573, at *9, prejudice is presumed where the "regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute." *Rombot*, 296 F. Supp. 3d at 388.

In the instant matter, ICE was required to provide Mr. Herrera the procedural protections codified in § 241.4(*l*). As another court explained:

> These regulations plainly provide due process to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release by, among other things, requiring that only certain designated officials make custody determinations; mandating that a noncitizen receive a copy of the decision to release or detain that individual; establishing criteria and factors applicable to detention, release, and revocation determinations; and requiring certain procedural safeguards upon revocation to allow a noncitizen to have the an opportunity to be heard to contest the reasons for revocation, including informal interviews and custody reviews.

*Santamaria Orellana*, 2025 WL 2444087, at *6 (internal citation omitted). "This conclusion is particularly true where the detention or re-detention of noncitizens is necessarily an action that results in the loss of personal liberty that requires due process protections." *Id.* While respondents argue against Mr. Herrera's release, they do not deny that the relevant regulations were implemented for the protection of noncitizens like him, nor that ICE was required to follow them.

Here, respondents violated the regulations set forth in § 241.4(*l*) in at least three ways. As previously discussed, respondents failed to provide Mr. Herrera with adequate and timely notice and an opportunity to be heard on the decision to revoke his release, "thwart[ing] his ability to contest that action." *Id.* Respondents also "violated the requirement that such a decision must be made either by an 'Executive Associate Commissioner' or by a 'district director.'"[5] *Id.* (citing § 241.4(*l*)(2)). Respondents do not say who made the decision to revoke Mr. Herrera's release, but there "there is no evidence, documentary or otherwise," that it was the Executive Associate Director of ICE or any district director. *Id.* Under these circumstances, the Court concludes that the decision to revoke Mr. Herrera's release was not made by an authorized official, constituting a separate violation of the binding regulations.

---

[5] The "Executive Associate Commissioner" referenced in the regulation was a title under DHS' predecessor agency, the Immigration and Nationalization Service ("INS"). That official is now known as the "Executive Associate Director of ICE." *Ceesay*, 781 F. Supp. 3d at 160 (citing 8 C.F.R. § 1.2).

*Id.*; *see also Ceesay*, 781 F. Supp. 3d at 160–61; *M.S.L.*, 2025 WL 2430267, at *11–12; *Zhu*, 798 F. Supp. 3d at 413; *Villanueva*, 801 F. Supp. 3d at 699–700.

Accordingly, this Court joins those in this District and around the country that have found when "ICE fails to follow its own regulation in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Seyam v. Noem*, 25-cv-3850-LL-SBC, 2026 WL 172511 (S.D. Ca. Jan. 22, 2026) (internal quotation marks omitted); *see also Somboune Virachak*, 26-cv-00391-STV, 2026 WL 746285 (D. Colo. Mar. 17, 2026); *Izquierdo Navarro*, 2026 WL 468582; *Sanchez v. Bondi*, 1:25-cv-02287-CNS, 2025 WL 3484756 (D. Colo. Dec. 4, 2025). Mr. Herrera must be released and restored to his prior conditions of supervised release.

## IV. Conclusion

None of the foregoing is meant to condone Mr. Herrera's history of making unauthorized entries into the United States. When ICE apprehended him in 2016 and reinstated his prior removal order, he could have been detained. *Guzman Chavez*, 594 U.S. at 526. If and when his administrative appeal is denied, and his legal avenues for remaining in this country are exhausted, he will have to leave. At that time, respondents may employ the appropriate legal processes to ensure that the order is enforced.

In the interim, ICE has engendered a protected liberty interest by releasing Mr. Herrera—an interest that has grown more substantial over the past nine years

that he has concededly complied with the terms of his supervised release.  That interest cannot be casually extinguished without providing the process required by ICE's own regulations and demanded by the Constitution.  "After all, if men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them."  *Grigorian*, 2025 WL 2604573, at *10 (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021)).

Therefore, it is hereby ORDERED that:

1. The Petition, ECF No. 1, is GRANTED.  Respondents SHALL release petitioner on his own recognizance within 48 hours of this Order.

2. Respondents SHALL NOT impose additional release conditions other than those that petitioner was subject to prior to his October 6, 2025 rearrest.

3. The parties SHALL, within five (5) days of this Order, file a joint status report informing the Court of the status of petitioner's release.

4. Respondents SHALL NOT transfer petitioner outside the District of Colorado or remove him from the United States pending resolution of this case.

It is SO ORDERED.[6]

Dated: March 31, 2026                BY THE COURT:

*[signature]*

---

[6] To the extent petitioner seeks attorneys' fees, *see* ECF No. 1 at 16, he is directed to file a separate motion complying with the Federal Rules of Civil Procedure and the Local Rules.

R. Brooke Jackson
Senior United States District Court Judge